1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11
12

DAVID CONNORS RUST,

Petitioner,

13

v.

14

MATTHEW CATE, Secretary of the
California Department of Corrections and
Rehabilitation,

15

16

Respondent.

Civil No.    08cv2404-JAH (CAB)

**REPORT AND
RECOMMENDATION TO DENY
PETITION FOR WRIT OF HABEAS
CORPUS**

17      This Report and Recommendation is submitted to United States District Judge John A.

18   Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States

19   District Court for the Southern District of California.

20                          I.  PROCEDURAL HISTORY

21      David Connors Rust (hereinafter "Petitioner") is a state prisoner who is proceeding pro

22   se with a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C.

23   § 2254. [Doc. No. 1.] Petitioner challenges his San Diego County Superior Court conviction of

24   two counts of lewd and lascivious conduct with a child under fourteen (Cal. Penal Code §

25   288(a)), claiming that his federal constitutional rights were violated because: (1) the court erred

26   in admitting evidence of the details of Petitioner's misdemeanor child pornography counts to

27   which he pled guilty before trial; (2) the court erred in admitting evidence of Petitioner's alleged

28   sexual misconduct with his daughter approximately 10 years before the present case; (3) the

court erred in refusing to give the jury instructions regarding a lesser included offense. [Doc. No. 1 at 6-8.] Petitioner also contends that the court erred in imposing consecutive sentences in violation of his due process rights [Doc. No. 1 at 9], and that the imposition of an upper term sentence violated his right to a jury trial under the Sixth Amendment [Doc. No. 1 at 10].

On April 4, 2009, Respondent filed an Answer to the Petition and a Memorandum of Points and Authorities in support of the Petition, and has lodged a portion of the state record. [Doc. No. 8.] Respondent contends that the California Court of Appeal reasonably and properly rejected all of Petitioner's claims. [Doc. No. 8-2 at 12-20.] On November 4, 2009, Petitioner filed a Notice of Change of address stating that he had been relocated to a different facility and that he had not received anything on this case since February 2009. [Doc. No. 9.] Therefore, on November 6, 2009, this court issued an order (1) sua sponte substituting Respondent Matthew Cate in place of Thomas Felker, (2) directing Respondent to serve Petitioner with a second copy of Respondent's answer, memorandum in support of the answer and notice of lodgments and, (3) sua sponte granting an extension of time to file a traverse to no later than January 12, 2010. [Doc. No. 10.] On January 6, 2010, Petitioner filed a Traverse. [Doc. No. 11.]

## II.  STATE PROCEEDINGS

In a twelve-count Information filed in the San Diego County Superior Court on June 17, 2005, Petitioner was charged with two counts of lewd and lascivious conduct with a child under the age of 14 (Cal. Pen. Code § 288(a)) (counts 1 and 2), and ten counts of misdemeanor possession of child pornography (Cal. Pen. Code § 311.11(a) (counts 3 through 12). [Lodgment 1 at 1-4.] It was also alleged that Petitioner had previously been convicted of discharging a firearm at a dwelling or occupied vehicle (Cal. Pen. Code §§ 246 and 12022.5), which constituted a serious felony prior and a strike prior (Cal. Pen. Code §§ 667(a)(1) and (b) - (i), 1170.12). [Lodgment 1 at 5.]

On November 8, 2005, Petitioner pleaded guilty to the child pornography charges (counts 3 through 12) and admitted the prior conviction allegations. [Lodgment 1 at 80-82, 276-278; Lodgment 2 at 41-44, 45-49.]

1    On November 10, 2005, a jury found Petitioner guilty of both counts of lewd and

2    lascivious conduct with a child under the age of 14. [Lodgment 1 at 155-56; Lodgment 2, vol.

3    4 at 363-365.]

4    On February 22, 2006, the trial court sentenced Petitioner to state prison for a total

5    determinate term of 25 years, consisting of a term of 16 years on count 1, plus a consecutive term

6    of four years on count 2, plus a consecutive term of five years for the serious felony prior

7    conviction. [Lodgment 1, Vol. 2 at 258; Lodgment 2, vol. 5 at 401-404.]

8    On January 11, 2007, Petitioner filed a direct appeal, raising all of the issues raised in this

9    habeas petition. [Lodgments 3 and 4.] On January 4, 2008, the California appellate court rejected

10    his appeal. [Lodgment 7 – People v. Rust, No. D048169, slip op. (Jan. 4, 2008).]    Petitioner

11    filed a Petition for Review with the California Supreme Court. [Doc. No. 1 at 2.] On March 20,

12    2008, the California Supreme Court denied Petitioner's petition for review. [Lodgment 8.]

13    III.  UNDERLYING FACTS

14    This Court gives deference to state court findings of fact and presumes them to be correct.

15    See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36, 113 S.Ct. 517, 121

16    L.Ed.2d 391 (1992) (holding findings of historical fact, including inferences properly drawn

17    from these facts, are entitled to statutory presumption of correctness). The relevant facts as found

18    by the state appellate court are as follows:

19          A.  The Charged Conduct
       In July 2004, 11-year-old Emily and her mother and sisters were staying
20    with Rust's family while visiting San Diego.  Emily's mother was a longtime
      friend of Rust's wife (Linda).  Their families were close, and Emily referred to
21    Rust and his wife as Uncle Dave and Aunt Linda.
            During the visit, Emily was to sleep with Kelly (Rust's 15-year-old
22    daughter) in Kelly's room, and the other members of Emily's family were
      distributed in other rooms.  On the night of the molestation, Rust's wife slept in
23    the master bedroom but Rust slept on a couch.
            Emily went to bed around 10:00 p.m. but she was feeling sick and was
24    coughing.  Emily's coughing disturbed Kelly's sleep so Kelly left her room and
      joined Linda in the master bedroom to sleep.  Around 4:00 a.m., Emily awoke and
25    found Rust lying about six inches away from her on Kelly's bed.  Emily was lying
      on her back wearing a t-shirt and pajama bottoms and panties.
26          Rust placed his hand under her t-shirt and used his palm to rub both her
      breasts for about four seconds.  He then moved his hand from her t-shirt and
27    placed it under her pajama bottoms and panties and rubbed the skin of her
      buttocks.  Rust asked, "Do you like me?" but Emily did not respond.  After the
28    second touching, Rust left the room.  Emily was mad because what Rust did was
      "really, really gross."

Rust and Emily had scheduled a morning motorcycle ride.  Her mother (Ann) noticed a change in Emily's demeanor, noting Emily appeared upset and sad, but Ann encouraged Emily to go with Rust.  Emily complied, but Ann noted that when she got on the motorcycle and put her arm around Rust's waist, Emily had a "disgust[ed] look" on her face.  When they returned about 10 minutes later, Ann privately asked Emily whether something was wrong.  After about an hour, Emily told Ann about the incident.

Ann and Emily then talked to Rust and Linda about what had happened.  Rust admitted he had touched Emily, he loved her, and she was his soul mate.  Linda appeared calm and "not very shocked" by the revelation.  Rust reacted to Ann's questioning by getting in her face and screaming at her that he had been molested as a child and that she did not understand.

A social worker went to Rust's house to investigate.  Rust admitted he "kissed her on the face and touched her on her breast area and touched her buttocks" and he did not do anything else "because she woke up."  When asked by the social worker why he touched Emily, Rust responded that earlier in the day Emily had told him "she wanted to spend more time with him and that she loved him, and he thought she meant that in an intimate way."  He told the social worker that "he loves little girls.  And the little boy in him wants to hug them and make everything all right."

After charges were filed, Rust represented (through his attorney) he would voluntarily surrender in October 2004.  Rust did not appear as promised, and in November 2004 the FBI received a tip that Rust was in Utah.  They located and arrested him.  Rust repeatedly denied his true identity to the arresting agents and claimed he was someone else.

B. The Other Bad Acts Evidence

*The Computer Evidence*

A federal investigation, conducted independently of the investigation of the charged offenses, found that Rust had downloaded child pornography to his personal computers.  Rust's home was searched and his computers seized.  The computers contained e-mails and writings authored by Rust that, among other things, described a "Code of Conduct" that should guide an adult in a sexual relationship with a child and conveyed his approval for and experiences with sexual relationships with children.  Technicians also found over 1500 images depicting child pornography, [1]some of which were shown (over defense objection) to the jury.

*The Prior Molestation*

Kelly testified Rust molested her when she was four or five years old, although she had no memory of the details of the incident.  Kelly made it a practice to avoid bing alone in the house with Rust.  A social worker testified there was a 1994 investigation regarding an incident in which Rust touched Kelly between her legs and made Kelly touch his penis, and he admitted (during the investigation of the current incident) it had occurred but that he had been drunk at the time.

C. Defense Case

Rust presented no affirmative evidence.  Rust argued there was a reasonable doubt whether he harbored the requisite intent when he touched Emily, arguing that he entered the room and touched her to see if she was in need of medical assistance for her coughing.

[Lodgment 7 at 2-5.]

---

[1] [footnote in original] Rust was charged with 10 counts of misdemeanor possession of child pornography and, prior to trial, pleaded guilty to those counts.

IV.  DISCUSSION

For the foregoing reasons, the Court finds that Petitioner's claims do not merit habeas relief.  The Court therefore recommends that judgment be entered denying the Petition.

A.  Standard of Review

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63 (2003). A state court's decision is "contrary to" clearly established Federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. See Early v. Packer, 537 U.S. at 8 (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

Under the "unreasonable application prong" of section 2254(d) (1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts). A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new

1  context where it should not apply, or unreasonably refuses to extend that principle to a new

2  context where it should apply." Williams v. Taylor, 529 U.S. at 407 (citation omitted).

3  "In order for a federal court to find a state court's application of [Supreme Court]

4  precedent 'unreasonable,' the state court's decision must have been more than incorrect or

5  erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted). "The state court's

6  application must have been 'objectively unreasonable.' " Id. at 520-21 (citation omitted); see also

7  Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003). In applying

8  these standards, this Court looks to the last reasoned state court decision, here the decision of

9  the Court of Appeal. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir.2008).

10  B.  Petitioner is not entitled to habeas relief on his claim that admission of certain evidence

11  violated his due process rights.

12  Petitioner argues that the court erred in admitting evidence of the details of Petitioner's

13  misdemeanor child pornography counts to which he pled guilty before trial. [Doc. No. 1 at 6.]

14  Petitioner also claims that the court erred in admitting evidence of his alleged sexual misconduct

15  with his daughter approximately ten years before the current incident, and that this violated his

16  constitutional right to due process and a fair trial. [Doc. No. 1 at 7.]  Respondent contends that

17  the pornography evidence and the prior molest evidence was admissible pursuant to California

18  Evidence Code section 1101, which permits evidence of prior bad acts when relevant to

19  establish, among other things, a defendant's intent, [Doc. No. 8-2 at 12], and that this is

20  consistent with Supreme Court authority [Doc. No. 8-2 at 13 (citations omitted)].  Respondent

21  also contends that the sexual misconduct evidence was admissible pursuant to California

22  Evidence Code section 1108, "which allows evidence of the defendant's uncharged sex crimes

23  to be introduced in a sex offense prosecution to demonstrate the defendant's predisposition to

24  commit such crimes," [Doc. No. 8-2 at 12, quoting People v. Mullens, 119 Cal.App.4th 648, 657

25  (2004)], and that this is consistent with federal precedent [Doc. No. 8-2 at 12 (citations

26  omitted)].

27  Petitioner presented his claims to the state supreme court in the petition for review. [Doc.

28  No. 1 at 6, 7.] The California Supreme Court summarily denied the petition for review.

-6-

1    [Lodgment No. 8.] In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a

2    presumption which gives no effect to unexplained state court orders but "looks through" them

3    to the last reasoned state court decision.  Petitioner presumably presented his  claim to the

4    appellate court in the same fashion it was presented to the state supreme court. [Lodgment 3 at

5    19-37; Doc. No. 1 at 6, 7.][2] The appellate court denied the claim in a reasoned opinion.

6    [Lodgment 7 at 5-8.]

7         The Court will therefore look through the silent denial by the state supreme court to the

8    appellate court opinion.  The appellate court stated:

9              A.  The Evidentiary Claims
             To prove Rust violated section 288, the prosecution must show (1) a
10    touching of a child under 14 and (2) that the touching was done with the intent to
      gratify the child's or the defendant's sexual desires.  (People v. Raley (1992) 2
11    Cal.4th 870, 907.) The first element was essentially conceded at trial and the only
      disputed issue was whether Rust possessed the requisite intent.  Rust argues
12    admitting the photographs from his computer and testimony concerning the prior
      molestation of his daughter constituted prejudicial error.
13              Legal Principles
             Evidence is relevant when it has "any tendency in reason to prove or
14    disprove any disputed fact that is of consequence to the determination of the
      action." (Evid. Code, § 210.)  "While there is no universal test of relevancy, the
15    general rule in criminal cases might be stated as whether or not the evidence tends
      logically, naturally, and by reasonable inference to establish any fact material for
16    the prosecution or to overcome any material matter sought to be proved by the
      defense. [Citation.] Evidence is relevant when no matter how weak it may be, it
17    tends to prove the issue before the jury." (People v. Slocum (1975) 52 Cal.App.3d
      867, 891.)
18              The Legislature has explicitly determined, by its enactment of Evidence
      Code section 1108, that evidence of other sex-related crimes is relevant and
19    admissible to prove a predisposition to commit sex crimes.  However, admission
      under section 1108 "has a safeguard against the use of uncharged sex offenses in
20    cases where the admission of such evidence could result in a fundamentally unfair
      trial. Such evidence is still subject to exclusion under Evidence Code section 352.
21    [Citation.] By subjecting evidence of uncharged sexual misconduct to the
      weighing process of section 352, the Legislature has ensured that such evidence
22    cannot be used in cases where its probative value is substantially outweighed by
      the possibility that it will consume an undue amount of time or create a substantial
23    danger of undue prejudice, confusion of issues, or misleading the jury. [Citation.]
      This determination is entrusted to the sound discretion of the trial judge who is in
24    the best position to evaluate the evidence." (People v. Fitch (1997) 55 Cal.App.4th
      172, 183.)
25              The Photographs

26

27    _____

28         [2] The Petitioner's actual petition to the California Supreme Court has not been lodged with this
      Court. However, Petitioner alleges that the claims were raised to the California Supreme Court [Doc.
      No. 1 at 2] and Respondent does not raise any exhaustion issues.

We conclude the photographs were admissible under Evidence Code section 1101.[3] Evidence code section 1101 permits the introduction of evidence of other offenses when relevant to prove an issue other than predisposition to commit the offense, such as intent. (*Id.* at subd. (b).) Rust's possession of images depicting prepubescent girls engaged in sexual acts with adults was relevant evidence from which a trier of fact could infer he harbored the intent required by section 288 when he touched Emily. (See *People v. Memro* (1995) 11 Cal.4th 786, 861-862; *People v. Dunnahoo* (1984) 152 Cal.App.3d 561, 576.)

However, evidence otherwise admissible under Evidence Code section 1101 is still subject to exclusion under Evidence Code section 352, and Rust appears to assert the trial court abused its discretion in admitting the photographs over his section 352 objection. However, a court need not exclude photographs merely because they contain graphic depictions of persons that could have been the subject of testimonial description. (*People v. Scheid* (1997) 16 Cal.4th 1, 18-19.)   The court here did not permit an avalanche of every pornographic photograph but limited the evidence to a few examples. Moreover, the prosecutor noted there were even more disturbing photographs (such as children in bondage) he was not offering, and the court observed the proffered examples did not seem to depict "any overt signs of distress by these young girls [in the pictures]," suggesting the court agreed these photographs (while inherently disturbing) were not unnecessarily grotesque examples. Under these circumstances, we cannot find the court abused its discretion in concluding the photographs' probative value (on either Rust's intent under § 1101 or as propensity evidence under § 1108) outweighed their prejudicial impact.

*The Prior Molestation*

Rust also assert [sic] the trial court abused its discretion by allowing evidence of his molestation of Kelly because its remoteness (approximately 10 years earlier) reduced its probative value, while it was highly inflammatory because it involved a victim much younger than the present victim. The evidence was admissible under either Evidence Code sections 1101 or 1108, and involved neither graphic descriptions of the events[4] nor particularly egregious conduct. The court carefully considered and weighed each of the relevant considerations, and Rust has not shown the trial court clearly abused its discretion in concluding the probative value of the evidence outweighed its prejudicial impact.

[Lodgment 7 at 5-9.]

The United States Supreme Court has clearly limited federal courts reviewing petitions for habeas relief to claims based upon federal questions: "it is not the province of the federal habeas court to reexamine state court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u> (McGuire), 502 U.S. 62,

---

[3] [Footnote in original] It also appears the photographs would be admissible under Evidence Code section 1108. The offense to which he pleaded guilty is one of the other crimes listed by section 1108 that qualifies as admissible propensity evidence. (Evid. Code, § 1108, subd. (d)(1)(A).) Accordingly, evidence of his commission of that offense was independently admissible under the latter section as propensity evidence apart from intent.

[4] [Footnote in original] Indeed, because Kelly could not recall any details of the touchings, the description of the molestations were [sic] brief and clinical recitations of the touchings.

1  68 (1991). Therefore, as a general rule, federal courts may not review a trial court's evidentiary

2  rulings. Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge also our traditional

3  reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial

4  courts."); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.1999), cert. denied, 528 U.S. 1198

5  (2000); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir.1998). A state court's evidentiary

6  ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair

7  as to violate due process.   Dillard v. Roe, 244 F.3d 758, 766 (9th Cir.2001, as amended May 17,

8  2001), cert. denied, 534 U.S. 905 (2001); Henry, 197 F.3d at 1031; Spivey v. Rocha, 194 F.3d

9  971, 977 (9th Cir.1999), cert. denied, 531 U.S. 995 (2000); see also Windham, 163 F.3d at 1103

10  (The federal court's "role is limited to determining whether the admission of evidence rendered

11  the trial so fundamentally unfair as to violate due process.").

12       "A habeas petitioner bears a heavy burden in showing a due process violation based on

13  an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended on other

14  grounds by 421 F.3d 1154 (9th Cir.2005). Put simply, admission of evidence violates due

15  process only if there is no permissible inference the trier of fact can draw from it. Id.; Houston

16  v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir.1999), cert. denied, 528 U.S. 1159 (2000); Jammal v.

17  Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991).

18  a.  The Child Pornography Evidence.

19       Petitioner fails to meet his heavy burden to show a due process violation on the admission

20  of the possession of child pornography.  As the Court of Appeal explained [Lodgment 7 at 7],

21  the evidence that Petitioner was in possession of child pornography was admissible under

22  California Evidence Code section 1101,[5] which permits the introduction of evidence of other

---

[5] Cal. Penal Code § 1101 states as follows:

(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted

1    offenses when relevant to prove an issue other than predisposition to commit the offense, such

2    as intent. Cal. Evidence Code § 1101(b).  Petitioner's possession of those images was relevant

3    evidence from which a trier of fact could infer that he harbored the requisite intent (for a charge

4    of lewd and lascivious behavior) when he touched Emily. [Lodgment 7 at 7.]

5        Petitioner also argues that the photographs should have been excluded under California

6    Evidence Code section 352[6] because the probative value of such evidence was outweighed by

7    its prejudicial effect. [Lodgment No. 3 at 33-34.] However, the Court of Appeal noted that the

8    trial court properly weighed the probative value of the child pornography evidence against its

9    potential for undue prejudice and did not abuse its discretion in allowing the evidence, especially

10   because the proffered photographs "(while inherently disturbing) were not unnecessarily

11   grotesque examples." [Lodgment No. 7 at 8.]  Thus, the California Court of Appeal concluded

12   that the trial court's admission of the child pornography evidence comported with California law

13   (id.), a conclusion to which this Court must defer. Bains v. Cambra, 204 F.3d 964, 972 (9th

14   Cir.2000) (citing Wainwright v. Goode, 464 U.S. 78, 84 (1983)).

15       Moreover, admission of this type of evidence is also consistent with federal law.  The

16   Supreme Court has noted that Federal Rule of Evidence 404(b)[7] "generally prohibits the

17

18       unlawful sexual act did not reasonably and in good faith believe that the victim
         consented) other than his or her disposition to commit such an act.

19       (c) Nothing in this section affects the admissibility of evidence offered to support or
         attack the credibility of a witness.

20       [6] Cal. Penal Code section 352 states:

21
22       The court in its discretion may exclude evidence if its probative value is substantially
         outweighed by the probability that its admission will (a) necessitate undue consumption
23       of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of
         misleading the jury.

24       [7] Federal Rule of Evidence 404(b) provides:

25       Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a
         person in order to show action in conformity therewith. It may, however, be admissible
26       for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
         knowledge, identity, or absence of mistake or accident, provided that upon request by the
27       accused, the prosecution in a criminal case shall provide reasonable notice in advance of
         trial, or during trial if the court excuses pretrial notice on good cause shown, of the
28       general nature of any such evidence it intends to introduce at trial.

1    introduction of evidence of extrinsic acts that might adversely reflect on the actor's character,

2    unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or

3    knowledge." Huddleston v. United States, 485 U.S. 681, 685 (1988). However, in Huddleston,

4    the Court was careful to point out that "[e]xtrinsic acts evidence may be critical to the

5    establishment of the truth as to a disputed issue, especially when that issue involves the actor's

6    state of mind and the only means of ascertaining that mental state is by drawing inferences from

7    conduct." Id. Here, one of the elements of the crime of lewd and lascivious conduct with a child

8    under fourteen (Cal. Penal Code § 288(a))[8] is that the accused must be shown to have acted

9    "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of

10   that person or the child."  The fact that Petitioner was in possession of child pornography is

11   certainly relevant evidence from which a jury could infer that he had sexual intent when he

12   touched Emily on the chest and buttocks.

13          Accordingly, the Court finds that the California court's rejection of Petitioner's claim was

14   neither contrary to, nor involved an unreasonable application of, clearly established federal law,

15   as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this

16   claim.

17   b.  Evidence of Prior Molestation.

18          Petitioner also fails to meet his heavy burden to show a due process violation on the

19   admission of evidence of the prior molestation.  The California Court of Appeals concluded that

20   the evidence was admissible under California Evidence Code sections 1101 (discussed above)

21   and 1108.  Section 1108 states in pertinent part:

22          (a) In a criminal action in which the defendant is accused of a sexual offense,
             evidence of the defendant's commission of another sexual offense or offenses is

23

---

24          [8]  Cal. Penal Code section 288(a) states:

25          (a) Any person who willfully and lewdly commits any lewd or lascivious act,

26          including any of the acts constituting other crimes provided for in Part 1, upon or with
             the body, or any part or member thereof, of a child who is under the age of 14 years,

27          with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual
             desires of that person or the child, is guilty of a felony and shall be punished by

28          imprisonment in the state prison for three, six, or eight years.

1   not made inadmissible by Section 1101, if the evidence is not inadmissible
pursuant to Section 352.
2   [Cal. Evid. Code section 1108.]

3   Petitioner argued that the trial court abused its discretion by allowing evidence of his

4   molestation of his daughter because the alleged molest was very remote in time (10 years prior

5   to the current incident)  and involved a much younger target (4 years old). [Lodgment 3 at 36.]

6   According to Petitioner, this alleged molest was very inflammatory and therefore should have

7   been excluded under Evidence Code section 352. [Id.] As the California Court of Appeal noted,

8   however, this evidence was admissible Evidence Code section 1101 and 1108. [Lodgment No.

9   7 at 8.] Moreover, the Court of Appeal found that the evidence admitted was "neither graphic

10  descriptions of the events nor particularly egregious conduct" and that the trial court properly

11  "considered and weighed each of the relevant considerations [under section 352]."  [Lodgment

12  No. 7 at 8-9.] Thus, the California Court of Appeal concluded that the trial court's admission of

13  the challenged evidence comported with California law (id.), a conclusion to which this Court

14  must again defer. Bains v. Cambra, 204 F.3d 964, 972 (9th Cir.2000) (citing Wainwright v.

15  Goode, 464 U.S. 78, 84 (1983)).

16  The question then is whether - despite the State court's compliance with California law

17  - Petitioner nonetheless can establish any federal violation sufficient to invoke a right to federal

18  habeas relief.  Again, there is no Supreme Court precedent prohibiting the use of prior bad acts

19  to prove propensity. Estelle v. McGuire, 502 U.S. 62, 68-75 n. 5 (1991); Alberni v. McDaniel,

20  458 F.3d 860, 862-66 (9th Cir.2006), Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir.2001),

21  rev'd on other grounds, 538 U.S. 202 (2003). In Alberni, the state court had determined that due

22  process was not violated by the admission of propensity evidence of past violent acts at the

23  petitioner's trial for second-degree murder. 485 F.3d at 863-67. On habeas corpus review, the

24  Ninth Circuit held that the state court's ruling was not objectively unreasonable. Id.

25  Recently, in Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir.2008), cert. denied, --- U.S.

26  ----, 129 S.Ct. 941, 173 L.Ed.2d 141 (2009), the Ninth Circuit rejected a petitioner's claim that

27  the admission of prior sexual offense evidence under California Evidence Code section 1108 was

28  unconstitutional. In doing so, the court specifically found that there is no clearly established

1  Supreme Court precedent establishing the admission of such propensity evidence was

2  unconstitutional, and, therefore, it could not be said that the California courts' rejection of the

3  claim either was contrary to, or involved an unreasonable application of, clearly established

4  federal law, as determined by the United States Supreme Court. Id. The same result is required

5  in this case.

6      Even were this not true, the admission of propensity evidence here did not violate general

7  due process principles. In United States v. LeMay, 260 F.3d 1018 (9th Cir.2001), the Ninth

8  Circuit held that there is "nothing fundamentally unfair about the allowance of propensity

9  evidence." Id. at 1026. The Court explained that "[a]s long as the protections of [Federal] Rule

10 [of Evidence] 403[9] remain in place to ensure that potentially devastating evidence of little

11 probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."

12 Id. (footnote added); see also United States v. Castillo, 140 F.3d 874, 881 (10th Cir.1998);

13 United States v. Mound, 149 F.3d 799, 801 (8th Cir.1998). Finally, in Mejia, the Ninth Circuit

14 found that the introduction of the propensity evidence in the total context of the case did not

15 render the trial fundamentally unfair and, in doing so,  noted that the petitioner had counsel to

16 defend him against the prior allegations and "specifically to cross-examine and mount a vigorous

17 defense against the alleged prior victim." Mejia, 534 F.3d at 1046.

18      There is nothing in Petitioner's case that would require a different result from LeMay or

19 Mejia.  The trial court found that evidence of the prior molestation was highly relevant to

20 establish Petitioner's intent with regard to Emily. [Lodgment 2, Vol. 1 at 4-5.] Moreover,

21 Petitioner's counsel vigorously cross-examined Kelly (the prior molest victim) and Detective

22 Priem (the detective who interviewed Kelly) regarding the alleged prior incident [Lodgment 2,

23 Vol. 4 at 241-246, 248, 255-261], and argued that there was no compelling proof that the

24 previous molest incident even occurred [Id. at 355].

25      Finally, with regard to both the child pornography and the prior molest evidence, the trial

26 court carefully instructed the jury on how to view the challenged evidence:

27 ─────────────

28      [9] Federal Rule of Evidence 403 is the federal counterpart to California Evidence Code § 352.

1

2

    Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that charged in this case.

3

    Sexual offense means a crime under the laws of a state or of the United States that involves any conduct made criminal by Penal Code section 288(a) or Penal Code section 311.11(A), possession of child pornography. The elements of Penal Code section 288(A) [lewd and lascivious conduct with a child under the age of 14] are set forth elsewhere in these instructions.

4

5

    If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.

6

7

    However, if you find by a preponderance of the evidence that the defendant committed prior sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you – if you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes. Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

8

9

10

11

    Within the meaning of the preceding instructions, the prosecutor has the burden of proving by a preponderance of the evidence that a defendant committed a crime other than those for which he is on trial.

12

    You must not consider the evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other crime.

13

    If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of that crime or crimes.

14

15

16

    Preponderance of the evidence means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who has the burden of proving it.

17

18

[Lodgment 2, Vol. 4 at 325-327.]

19

20

    Thus, the jury was instructed that evidence of the possession of child pornography and

21

the prior molest was received for a limited purpose and was not sufficient alone to convict

22

Petitioner. [Id.] A jury is presumed to follow the instructions it is given. Weeks v. Angelone,

23

528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 211 (1987). Petitioner has

24

provided no evidence to the contrary. Accordingly, the Court finds that the California court's

25

rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application

26

of, clearly established federal law, as determined by the United States Supreme Court. Therefore,

27

habeas relief is not warranted on this claim.

28

C. Petitioner is not entitled to habeas relief on his claim that the trial court's refusal to give a lesser included offense instruction violated his right to due process and a fair trial.

-14-

08cv2404

In Ground Three, Petitioner argues that the trial court violated his right to due process and a fair trial when it refused to instruct the jury on the crime of battery as a lesser included offense of the lewd and lascivious charges. [Doc. No. 1 at 8; Lodgment 3 at 38-43.] Respondent contends that there is no federal constitutional right to instructions on lesser included offenses in noncapital cases and, therefore, no basis for habeas relief. [Doc. No. 8-2 at 15-16.] Respondent further argues that, even if there is a basis for federal habeas relief, the California courts reasonably rejected Petitioner's claim because there was no substantial evidence from which a reasonable jury could conclude that Petitioner committed the lesser offense of battery but not the greater offense of lewd acts. [Doc. No. 8-2 at 16.]

Petitioner presented his claims to the state supreme court in the petition for review. [Doc. No. 1 at 8.] The California Supreme Court summarily denied the petition for review. [Lodgment No. 8.] In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision. Petitioner presumably presented his claim to the appellate court in the same fashion it was presented to the state supreme court. [Lodgment 3 at 38-43; Doc. No. 1 at 8.] The appellate court denied the claim in a reasoned opinion. [Lodgment 7 at 9-12.]

The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion. The appellate court stated:

> B. The Lesser Included Offense Issue
> Rust requested a jury instruction on battery as a lesser included offense to the charged offenses. The trial court denied the request, and Rust asserts this was prejudicial error.
> *Legal Principles*
> A trial court must instruct the jury not only on the crime charged but also on lesser offenses both included within the crime charged and supported by the evidence. (*People v. Barton* (1995) 12 Cal.4th 186, 190, 194-195.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) Pure speculation does not constitute the requisite substantial evidence sufficient to support a lesser included offense instruction. (*People v. Wilson* (1992) 3 Cal.4th 926, 942.) If there is no proof (other than an outright and inexplicable rejection of portions of the prosecution's evidence) the offense was less than that charged, an instruction on a lesser included offense need not be given. (*People v. Wickersham* (1982) 32

Cal.3d 307, 323-324, overruled on another ground in *People v. Barton, supra,* 12 Cal.4th at pp. 200-201.)

Even where the trial court erroneously failed to instruct on a lesser included offense supported by the evidence, the error is one of state law alone. (*People v. Breverman, supra,* 19 Cal.4th at pp. 165-179.) It does not require reversal unless "an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Id.* at p. 165; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

*Analysis*

We conclude that, even assuming battery is a necessarily lesser included offense to the charged offense of section 288, subdivision (a), [10] there was no error in declining the requested instruction on battery because there was no substantial evidence from which a reasonable jury could conclude Rust committed the lesser offense of battery but not the greater offense of lewd acts. The only theory upon which the jury could have found a battery was that Rust did not touch Emily with the intent to gratify either her or his sexual desires. The only *evidence* is that Rust *did* possess the requisite intent: the places he touched (her breasts and buttocks), the manner he touched them (under her clothes with skin to skin contact), and the time and place (at night and in her bed), all point to sexual activity. Moreover, his words to Emily at the time (inquiring as to her affections toward him), and to Emily's mother (he touched Emily because he loved her, they were soul mates, and he had been molested as a child) and the social worker (he kissed Emily and touched her private parts because Emily had told him that day that she loved him and he thought she meant that in an intimate way), bespeak a sexual intent. Finally, the independent evidence of his pedophilia confirmed that he is sexually aroused by children. Although Rust protests that there was evidence from which a jury could have concluded he harbored an innocent intent (of checking on her medical well-being), the skin to skin touching of her private parts and the utter absence of any contemporaneous statements by Rust inquiring as to her health convinces us there was no substantial evidence (other than an outright and inexplicable rejection of the affirmative evidence) that the offense was less than that charged.

The same facts convince us that, even if the court erred by not giving the requested instruction, any error was harmless. In *People v. Thomas, supra,* 146 Cal.App.4th 1278, the court concluded battery was a lesser included offense to a charge of violating section 288, subdivision (a), but nevertheless found the error harmless as to the counts involving touchings of the victims' buttocks. The court reasoned that, under the evidence of that case (i.e. the touchings involved the victim' [sic] buttocks, some touchings were accompanied by comments suggesting a sexual interest, and the defendant had shown a sexual attraction to boys), the error was harmless because "no reasonable jury could have concluded that the incident was merely an offensive touching rather than a lewd act within the meaning of section 288." (*Thomas,* at pp. 1293-1294.) Here, Rust's actions, words and sexual preferences convince us no reasonable jury could have concluded the incident was merely a battery rather than a lewd act within the meaning of section 288.

[Lodgment 7 at 9-12.]

---

[10]  [footnote in original] An offense is necessarily included in the greater offense "when the greater offense cannot be committed without necessarily committing the lesser offense." (*People v. Marshall* (1997) 15 Cal.4th 1, 38.) The court in *People v. Thomas* (2007) 146 Cal.App.4th 1278 has recently concluded battery is a lesser included offense to a charge of violating section 288, subdivision (a), because it is impossible to commit the greater crime of lewd acts without also committing the lesser offense of battery. (*Thomas,* at pp. 1291-1293.) We assume *Thomas* is correct for purposes of our analysis.

08cv2404

As an initial matter, a state court's failure to instruct on a lesser included offense in a non-capital case generally is not cognizable in a federal habeas proceeding. Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (citing Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.1998)). Although the right Petitioner seeks to assert has been recognized in capital cases, Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the United States Supreme Court has never extended the right to criminal defendants in non-capital cases. See Solis, 219 F.3d at 928-29.  Under Ninth Circuit law, the failure to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional question.  Windham, 163 F.3d at 1106; Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995).  Therefore, Petitioner is not entitled to habeas relief for his claim that his due process rights were violated for failure to include jury instructions on lesser included offenses.

Even assuming that Petitioner has a federal constitutional right to receive adequate instructions on his theory of the case, see Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.1984)), the Court of Appeal's rejection of the claim was not contrary to clearly established federal law because there was not substantial evidence to support the lesser-included offense instructions. See Solis, 219 F.3d at 929 (denying federal habeas relief where California Court of Appeal found the evidence to support lesser-included offenses was not substantial).

The California Supreme Court has held that, under state law, a "trial court need not instruct on a lesser included offense whenever *any* evidence, no matter how weak, is presented to support an instruction, but only when the evidence is substantial enough to merit consideration by the jury." People v. Barton, 12 Cal.4th 186, 195 n. 4 (1995) (emphasis in original). In this context, substantial evidence means evidence from which reasonable jury members could "conclude that the lesser offence, but not the greater, was committed." People v. Ochoa, 19 Cal.4th 353, 422 (1998) (citations omitted).

Under California law, the crime of lewd and lascivious conduct (Cal. Penal Code section 288(a)) requires (1) a touching of a child under 14 and (2) that the touching was done with the intent to gratify the child's or the defendant's sexual desires. People v. Raley, 2 Cal.4th 870, 907

(1992).  A battery is any willful and unlawful use of force or violence upon the person of another.  Cal. Penal Code section 242.  Here, there was no substantial evidence from which a reasonable jury could conclude that Petitioner committed the lesser offense of battery but not the greater offense of lewd acts.  As the Court of Appeal pointed out, "[t]he only *evidence* is that Rust *did* possess the requisite intent:  the places he touched (her breasts and buttocks), the manner he touched them (under her clothes with skin to skin contact), and the time and place (at night and in her bed), all point to sexual activity." [Lodgment 7 at 10, 11; Lodgment 2, Vol. 3 at 163-175, 195, 221-222.] In addition, Petitioner's "words to Emily at the time (inquiring as to her affections toward him), and to Emily's mother (he touched Emily because he loved her, they were soul mates, and he had been molested as a child) and the social worker (he kissed Emily and touched her private parts because Emily had told him that day that she loved him and he thought she meant that in an intimate way), bespeak a sexual intent." [Lodgment 7 at 11; Lodgment 2, Vol. 3 at 176-178, 198-200.]  Finally, the "independent evidence of his pedophilia confirmed that he is sexually aroused by children." [Lodgment 7 at 11; Lodgment 2, Vol. 3 at 98-136.] On the other hand, there was no substantial evidence (other than an outright rejection of the affirmative evidence of sexual intent) that Petitioner had an innocent intent when touching Emily. [Lodgment 7 at 11.] Therefore, the Court of Appeal was correct in its determination that, under California law, a lesser included offense instruction was not required.

Even assuming, however, that Petitioner had stated a cognizable claim, and that the trial court constitutionally erred in failing to give a lesser included offense instruction, Petitioner would still not be entitled to habeas relief because any such error was, as the Court of Appeal determined, harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1997); see also Clark v. Brown, 450 F.3d 898, 905 (9th Cir. 2006) ("A habeas petitioner must show that the alleged instructional error 'had substantial and injurious effect or influence in determining the jury's verdict.' "), cert. denied, 549 U.S. 1027, 127 S.Ct. 555, 166 L.Ed.2d 423 (2006). In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine that: (1) the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent; and (2) the petitioner

suffered prejudice under <u>Brecht</u> from the constitutional error. <u>Inthavong v. LaMarque</u>, 420 F.3d 1055, 1059 (9th Cir.2005). Both of these tests must be satisfied before relief can be granted. <u>Id</u>. at 1061; <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 120, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007) ("in § 2254 proceedings a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in <u>Brecht</u>, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in <u>Chapman</u> [v. California], 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705"). Here, at a minimum, the second prong of this test has not been satisfied. In light of the weight of the evidence, discussed in detail above, Petitioner cannot demonstrate that the trial court's failure to give a lesser included offense instruction had a substantial and injurious effect on the outcome of the proceedings.

Accordingly, Petitioner fails to demonstrate that he is entitled to habeas relief on this claim.

D.  <u>Petitioner is not entitled to habeas relief on his claim that the trial court erred in imposing two punishments for his touching of Emily D.</u>

In Ground Four, Petitioner claims that his rights to due process and a fair trial were violated when the trial court imposed two punishments for touching Emily D, when any touching of Emily D constituted only one criminal act. [Doc. No. 1 at 9; Lodgment 3 at 44 -47.] Second, Petitioner claims that the court erred in failing to stay the sentence of one felony count pursuant to Penal Code section 654. [Doc. No. 1 at 9; Lodgment 3 at 47-51.] Finally, the court erred in not imposing concurrent terms. [Doc. No. 1 at 9; Lodgment 3 at 51-55.] Respondent contends that Petitioner's claim that his sentence violated California Penal Code section 654 is not cognizable on federal habeas review because it only asserts a state law violation and fails to raise a constitutional question. [Doc. No. 8-2 at 17 (citations omitted).]  Respondent further contends that Petitioner fails to provide any Supreme Court authority for his proposition that the imposition of consecutive sentences violates his due process rights and, therefore, he fails to state a claim for federal habeas relief. [<u>Id</u>.]

1    Petitioner presented his claims to the state supreme court in the petition for review. [Doc.

2   No. 1 at 9.] The California Supreme Court summarily denied the petition for review. [Lodgment

3   No. 8.] In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption

4   which gives no effect to unexplained state court orders but "looks through" them to the last

5   reasoned state court decision.  Petitioner presumably presented his  claim to the appellate court

6   in the same fashion it was presented to the state supreme court. [Lodgment 3 at 44 - 55; Doc. No.

7   1 at 9.] The appellate court denied the claim in a reasoned opinion. [Lodgment 7 at 12 - 18.]

8    The Court will therefore look through the silent denial by the state supreme court to the

9   appellate court opinion.  The appellate court stated:

10       C.  The Multiple Convictions Issue
          Rust argues it was error to permit the jury to convict him of two offenses.
11    He alternatively asserts that, even if he was properly convicted of two offenses,
      it was error not to stay execution of sentence on one of the convictions pursuant
12    to section 654.
          *Legal Framework*
13        "[A] criminal defendant may be convicted of multiple statutory violations
      [citation] where he commits identical sex acts which are briefly interrupted . . . .
14    " (*People v. Harrison* (1989) 48 Cal.3d 321, 324 (*Harrison*).  In *People v. Scott*
      (1994) 9 Cal.4th 331, the court applied *Harrison* to uphold multiple convictions
15    under section 288 for conduct occurring in a single episode, reasoning that "one
      offense is complete and another one begins whenever the perpetrator stops and
16    resumes unlawful activity during a sexual assault."  (*Scott*, at p. 345.)  *Scott*
      reasoned that  a violation of section 288 is complete as soon as the requisite
17    touching of a child under the age of 14 occurs with a lewd intent.  (*Scott*, at pp.
      341-343.)  "Each individual act that meets the requirements of section 288 can
18    result in a 'new and separate' statutory violation. [Citation] . . . [A] more lenient
      rule of conviction should not apply simply because more than one lewd act occurs
19    on a single occasion. [Citation.] Under defendant's approach, the clever molester
      could violate his victim in numerous lewd ways, safe in the knowledge that he
20    could not be convicted and punished for every act.  In light of the special
      protection afforded underage victims, we cannot conceive that the Legislature
21    intended this result.  (*Id*. at pp. 346-347.)  Thus, *Scott* supports multiple
      convictions under section 288 where distinct lewd acts are separated by at least a
22    brief interruption.
          In *People v. Jimenez* (2002) 99 Cal.App.4th 450 (*Jimenez*), the court
23    rejected a claim that the fondling of several body parts on one occasion could
      support only one conviction under section 288.  (*Jimenez*, at pp. 452-454.)
24    *Jimenez* concluded there was no reasonable justification for treating several acts
      of fondling differently than other types of contact between the perpetrator and the
25    victim.  "It cannot reasonably be doubted that, when fondling of an underage
      victim moves from one area of the body to another, a separate outrage has
26    occurred.  A defendant who violates multiple areas of the victim's body is
      deserving of greater punishment." (*Id*. at p. 456.) *Jimenez* held that each fondling
27    of a body part accompanied by the requisite intent constitutes a violation of
      section 288 (*Jimenez*, at pp. 455-456), and "[t]here is no requirement that there be
28    a delay between the completion of one act and the commencement of  another."
      (*Id*. at p. 457.)

-20-

*Multiple Convictions Were Proper*

Rust asserted below that there was some evidence from which a jury could have found the touchings were not distinct acts but were instead aspects of a continuous single touching, and submitted a special instructions stating:

"In order to find defendant guilty of multiple counts of lewd act[s] upon Emily D. you must find that he engaged in separate and distinct touching of her. You must find that each alleged count was completed, that the defendant stopped and resumed his unlawful activity during a sexual assault. If you find that defendant only engaged in one unlawful touching or groping that consisted of one continuous course of unlawful conduct, you may only convict him of one count."

The court rejected the instruction, reasoning (1) the matter was covered by CALJIC 17.02, (2) the evidence showed two distinct touchings, and (3) *Scott* barred defense counsel from amalgamating all touchings during the single incident into a single offense.

We conclude the trial court correctly rejected the instruction. First, it incorrectly states the law articulated in *Scott* and *Harrison*. *Harrison* concluded that multiple similar acts committed in rapid succession could support multiple convictions as long as there was some interruption, even a brief one, between the acts (*Harrison, supra,* 48 Cal.3d at p. 324), and Rust's proposed instruction contained no articulation of the "however brief" test for multiple acts in rapid succession. Moreover, *Harrision* addressed multiple *identical* acts occurring in rapid succession, and did not hold that *different* acts, committed with hands fondling different body parts, must be separated by time or by force to warrant separate convictions. To the contrary, *Harrison* noted "that where the acts are of an entirely *different* nature, they may result in multiple convictions even if committed in rapid succession. Courts have long assumed that no minimum amount of time must separate such acts, nor must they be punctuated by any other significant nonsexual activity." (*Id.* at p. 330.) Here, the discrete fondling of separate sexual areas appears to qualify for *Harrison's* "no minimum amount of time" separating the acts.

Finally, even assuming the proposed instruction was correct (in requiring an interruption when the fondling involves wholly distinct areas of the victim's body) and was not incomplete (by omitting the "however brief" test for separating different offenses), there is no *substantial* evidence from which a jury could have found Rust's touchings were mere segments of an uninterrupted continuum. The only evidence on the subject came from Emily. She testified Rust slipped his hand down her t-shirt from the top and rubbed her breasts in a circular motion for about four seconds. He then removed his hand before placing his hand down inside her pajamas and panties, about 12 inches inside her pajamas, and rubbing her buttocks. After he was finished rubbing her buttocks he asked, "Do you like me?" This evidence clearly permits a conclusion there was some hiatus, however brief, between the two touchings.

Rust argues that the cross-examination could support a finding that the breast rubbing and buttocks rubbing were parts of one continuous motion lasting three or four seconds. Although defense counsel framed a series of questions that appeared to elicit Emily's agreement to that scenario,[11] Emily clarified on redirect

---

[11] [Footnote in original] The questions and answers on cross-examination were:

"Q: Okay, when he reached the hand down [the top of your t-shirt], was it down there for one or two seconds, or three or four seconds?"

"A: Three to four seconds."

"Q: Isn't it true that that hand never was pulled out at all; the hand stayed down there, didn't it?"

"A: Yes, Yes."

that was not what had happened, explaining that Rust touched her breasts, and then removed his hand from her shirt before moving his hand down to touch her buttocks.[12]  Because there is no substantial evidence that the two touchings were incidental to a single rubbing, but were instead interrupted by at least some hiatus, the instruction requested by Rust was not supported by substantial evidence and was properly refused.

*The Section 654 Issue*

Rust alternatively contends the four-year sentence on the second count should have been stayed under section 654.[13]

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  The focus of section 654 is to protect against multiple punishment in situations were "there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]" (*Harrison, supra,* 48 Cal.3d at p. 335.)

A claim under section 654 is reviewed for substantial evidence. (*Jimenez, supra,* 99 Cal.4th at pp. 456-457.)  In assessing whether the crimes were divisible, the court must make factual determinations on the defendant's intent and objectives, and the court's implied factual findings will be upheld if supported by substantial evidence. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

Emily testified that Rust touched her breasts, then removed his hand, and then slipped it down her pants to rub her buttocks.  In *People v. Madera* (1991) 231 Cal.App.3d 845 (cited with approval in *Scott, supra,* 9 Cal.4th at p. 347-348, fn. 9), the court analyzed a claim that multiple section 288 convictions triggered application of section 654.  The *Madera* court concluded section 654 applies where one act "directly facilitates or is merely incidental to the commission of" the second act, but would not apply where the evidence showed the act was not preparatory or incidental to the other but was instead a source of independent sexual gratification each time he committed the different unlawful act. (*Madera,* at p. 855.)

Here, there is substantial evidence to support the implied findings that each act was separate from each other, and were a source of independent sexual gratification, rather than merely an act that "directly facilitate[d] or [was] merely incidental to" the other act. (*People v. Madera, supra,* 231 Cal.App.3d at p. 855.)  The two distinct acts, separated in time from each other (even though perhaps only briefly), were not inextricably related to the pursuit of each other.  Thus, substantial evidence supports a reasonable inference that Rust's touching of

---

"Q: So the hand stayed down, and then after that it went down toward the butt?"
"A: Yes."

[12]  [Footnote in original] On redirect, the questions were:
"Q: I think [defense counsel] was asking you if the hand never came out of the shirt. Sounds like a totally dumb question. [¶] When he touched your butt, his hand didn't like go all the way down the shirt and through the shirt and down [to your buttocks], did it?
"A: No."
"Q: He pulled it out and went down your butt, too?"
"A: Yes."

[13]  [Footnote in original] Rust peremptorily asserts that imposition of consecutive sentences denies his right to due process.  However, it appears Rust's constitutional argument is predicted on his claim that imposing consecutive sentences was error under section 654.  Because we reject Rust's section 654 claim, we do not reach his due process argument.

1    Emily's breasts and buttocks were each for the purpose of arousal, rather than
     being preparatory or incidental to each other.
2   [Lodgment 7 at 12-18.]

3        Federal habeas corpus relief may be granted "only on the ground that [Petitioner] is in

4   custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

5   2254(a). Mere errors in the application of state law are not cognizable on habeas corpus. Estelle

6   v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Matters relating to

7   sentencing and serving of a sentence generally are governed by state law and do not raise a

8   federal constitutional question. See Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir.1989)

9   (holding that question of whether particular prior conviction qualifies for sentence enhancement

10  under California law is not cognizable on federal habeas corpus); see also Middleton v. Cupp,

11  768 F.2d 1083, 1085 (9th Cir.1985), cert. denied, 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741

12  (1986) (federal habeas relief "unavailable for alleged error in the interpretation or application

13  of state law"); Sturm v. California Adult Authority, 395 F.2d 446, 448 (9th Cir. 1967), cert.

14  denied, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 466 (1969) ("a state court's interpretation of its

15  [sentencing] statute does not raise a federal question"). "[S]tate courts are the ultimate expositors

16  of state law." Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); see

17  also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989), cert. denied, 493 U.S. 942,

18  110 S.Ct. 344, 107 L.Ed.2d 332 (1989).

19       Under narrow circumstances, however, the misapplication of state sentencing law may

20  violate due process. See Richmond v. Lewis, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411

21  (1992). "[T]he federal, constitutional question is whether [the error] is so arbitrary or capricious

22  as to constitute an independent due process" violation. Id. (internal quotation and citation

23  omitted); see also Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.1994) ( "Absent a showing of

24  fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify

25  federal habeas relief.").

26       Here, the sentencing court did not commit any state law error, much less any Due Process

27  violation. As the Court of Appeal held, the multiple convictions were proper because, under

28  California law, "each fondling of a body part accompanied by the requisite intent constitutes a

1   violation of section 288" (Lodgment 7 at 13, <u>citing</u> <u>People v. Jimenez</u>, 99 Cal.App.4th 450, 455-

2   456 (2002)), and "'[t]here is no requirement that there be a delay between the completion of one

3   act and the commencement of another.'" [Lodgment 7 at 13, <u>quoting</u> <u>Jimenez</u>, 99 Cal. App.4th

4   at 457.] Here, there is substantial evidence that there were two separate fondlings (one involving

5   her breasts, the other involving her buttocks), each done with the requisite sexual intent.

6   [Lodgment 2, Vol. 3  at166-174, 187-188.]

7        Similarly, there was no violation of Section 654, which protects against multiple

8   punishments in situations "where one act 'directly facilitates or is merely incidental to the

9   commission of ' the second act." [Lodgment 7 at 17, quoting <u>People v. Madera</u>, 231 Cal.App.3d

10   845, 855.] Section 654 does not apply, however, "where the evidence showed the act was not

11   preparatory or incidental to the other but was instead a source of independent sexual gratification

12   each time he committed the different unlawful act." [<u>Id.</u>] Here, there was substantial evidence

13   that each touching was done for the purpose of sexual gratification, and was not preparatory or

14   incidental to the other. [Lodgment 2, Vol. 3  at166-174, 187-188.] Therefore, there is no state

15   law violation, and no due process violation.

16        Finally, Petitioner's argument that there should have been concurrent sentences appears

17   to be based on his assertion that there was a violation of Section 654.  For the reasons set forth

18   above, this court disagrees.  Thus, Petitioner has failed to show that the Court of Appeal's

19   decison was contrary to or an unreasonable application of Supreme Court precedent, and he is

20   not entitled to habeas relief on this claim.

21   E.  <u>Petitioner is not entitled to habeas relief on his claim that imposition of the upper term on</u>

22   <u>Count 1 violated his constitutional rights to a fair trial and a unanimous jury</u>.

23        In Ground Five, Petitioner claims the imposition of the upper term on Count 1 without

24   the finding of aggravation by the jury, violated his constitutional rights to a fair trial and

25   unanimous verdict. [Doc. No. 1 at 10; Lodgment 3 at 56-58.] Respondent contends the California

26   Court of Appeal reasonably and properly rejected this claim, because the trial court appropriately

27   found several factors in aggravation, including prior criminal convictions, and was therefore

28   justified in imposing the upper term as the appropriate punishment. [Doc. No. 8-2 at 18-20.]

Petitioner presented his claims to the state supreme court in the petition for review. [Doc. No. 1 at 10.] The California Supreme Court summarily denied the petition for review. [Lodgment No. 8.] In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision.  Petitioner presumably presented his claim to the appellate court in the same fashion it was presented to the state supreme court. [Lodgment 3 at 56-58; Doc. No. 1 at 10.] The appellate court denied the claim in a reasoned opinion. [Lodgment 7 at 18-21.]

The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.  The appellate court stated:

> D.  The Sentence
>
> Rust asserts that selection of the upper term on count 1 violated *Cunningham* because it was based on facts not found by the jury beyond a reasonable doubt.  In *Cunningham*, the high court concluded California's determinate sentencing law (DSL) violates the Sixth Amendment because it "allocates to judges sole authority to find facts permitting the imposition of an upper term sentence[.]" (*Cunningham, supra*, ___ U.S. at p. ___, 127 S.Ct. at p. 870.)  Relying on *Cunningham*, Rust contends the trial court's imposition of the upper term in this case violated his Sixth Amendment right to a jury trial.
>
> However, the California Supreme Court's recent decision in *People v. Black* (2007) 41 Cal.4th 799 (*Black II*) concluded a trial court may impose the upper term without offending *Cunningham* if the defendant "is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles." (*Black II*, at p. 813.)  We conclude *Black II* controls this case and mandates affirmance of the sentence.
>
> In *Black II*, our Supreme Court addressed the same issue raised by Rust here: whether imposition of the upper term violated the defendant's right to a jury trial.  The *Black II* court noted that in *Blakely v. Washington* (2004) 542 U.S. 296, the United States Supreme Court "explicitly recognized the legitimate role of 'judicial factfinding' in indeterminate sentencing, in which the judge may 'implicitly rule on those facts he deems important to the exercise of his sentencing discretion.' [Quoting *Blakely*, at p. 309.]" (*Black II, supra,* 41 Cal.4th at pp. 812-813.)  Accordingly, the *Black II* court concluded that "so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Id.* at p. 813.)  The *Black II* court added that "[t]he facts upon which the trial court relies in exercising discretion to select among the terms available for a particular offense 'do not pertain to whether the defendant has a legal *right* to a lesser sentence – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.' [Citation.]" (*Ibid.*)
>
> After noting that "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term" under

-25-

California's DSL, the *Black II* court concluded that "if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum'" for Sixth Amendment purposes. (*Black, II, supra*, 41 Cal.4th at p. 813.)  The *Black II* court then noted the United States Supreme Court "consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction[,] [citations] [and that] 'recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' [Citation.]" (*Black II*, at p. 818].)  On that basis, the *Black II* court reasoned a defendant's criminal history alone may render him or her eligible for the upper term. (*Ibid.*)

The *Black II* court, after noting the probation report reflected the defendant in *Black II* had convictions both numerous (three misdemeanors and two felonies) and of increasing seriousness, next addressed the defendant's argument that, even if the fact of a prior conviction may not be a jury issue, he was nevertheless entitled to a jury trial (under *Cunningham*) on the issues of numerosity or increasing seriousness.  The *Black II* court, rejecting the argument, explained the defendant "reads the 'prior conviction' exception too narrowly. [Citations.] As we recognized in [*People v. McGee* (2006) 38 Cal.4th 682], numerous decisions from other jurisdictions have interpreted the *Almendarez-Torres [v. U.S.* (1998) 523 U.S. 224] exception to include not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions. [Citations.] [¶] The determinations whether a defendant has suffered prior convictions, and whether those convictions are 'numerous or of increasing seriousness' (Cal. Rules of Court, rule 4.421(b)(2)), require consideration of only the number, dates, and offenses of the prior convictions alleged.  The relative seriousness of these alleged convictions may be determined simply by reference to the range of punishment provided by statute for each offense.  This type of determination is 'quite different from the resolution of issues submitted to a jury, and is one more typically and appropriately undertaken by a court.' [Quoting *McGee, supra*, 38 Cal.4th at p. 706.]" (*Black II, supra*, 41 Cal.4th at pp. 819-820. fn. omitted.)

Here, the court specifically noted Rust's prior convictions were numerous and of increasing seriousness.  Because Rust's numerous convictions were alone a sufficient basis to render him eligible for the upper term, we are compelled under *Black II* to conclude Rust suffered no Sixth Amendment violation by the trial court's exercise of its discretion in selecting the upper term in his case based on facts determined by the trial court. (*Black II, supra*, 41 Cal.4th at p. 820.) [Lodgment 7 at 18-21.]

Under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely v. Washington, 542 U.S. 296, 301, quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). A fact of a prior conviction need not be proved to a jury beyond a reasonable doubt. Almendarez-Torres v. United States, 523 U.S. 224, 244, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). The exception for prior convictions was recognized in Blakely, 542 U.S. at 301, and in Cunningham v. California, 549 U.S. 270, 288, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). In

California, the existence of a single aggravating circumstance, including a prior conviction, is sufficient to impose an upper term sentence. <u>People v. Black</u> (Black II), 41 Cal.4th 799, 813 (2007), cert. den. 128 S.Ct. 1063 (2008). Here, because the trial judge relied on Petitioner's prior convictions as an aggravating factor [Lodgment 1 at 248; Lodgment 2, Vol. 5 at 402-403], Petitioner's Sixth Amendment rights were not implicated to the extent the sentence was based on his criminal record. Therefore, the Court of Appeal's decision was not contrary to or an unreasonable application of Supreme Court precedent, and this claim for habeas relief should be denied.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **March 5, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 19, 2010.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objection on appeal of this Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: February 1, 2010

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

-27-

08cv2404